**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EAGLE PHARMACEUTICALS, INC.,

*Plaintiff*,

v.

ELI LILLY AND COMPANY,

*Defendant*.

Civil Action No. 17-6415 (JMV) (MF)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This is an antitrust action in which Plaintiff alleges that Defendant undertook activities to monopolize the market for certain injectable drug products. Currently pending before the Court is the motion by Defendant Eli Lilly and Company ("Eli Lilly" or "Defendant") to transfer the case pursuant to 28 U.S.C. § 1404(a), or, alternatively, to stay the matter until related litigation in the United States District Court for the District of Delaware is resolved. D.E. 14. Plaintiff Eagle Pharmaceuticals, Inc. ("Eagle" or "Plaintiff") opposes the motion. D.E. 20. The Court reviewed all submissions made in connection the motion,[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion to transfer is **GRANTED**. Accordingly, this case will be transferred to the United States District Court for the District of Delaware.

---

[1] Defendant's brief in support of its motion will be referred to hereinafter as "Def. Br." D.E. 14 (redacted version), D.E. 15 (unredacted version); Plaintiff's brief in opposition will be referred to hereinafter as "Opp. Br." D.E. 21 (redacted version), D.E. 22 (unredacted version); Defendant's reply will be referred hereinafter as "Def. Reply." D.E. 29 (redacted version), D.E. 30 (unredacted version).

## I. FACTUAL BACKGROUND[2] AND PROCEDURAL HISTORY

Plaintiff is a pharmaceutical company focused on developing injectable products. D.E. 1 (redacted version), D.E. 4 (unredacted version), ("Compl.") at ¶ 7. Defendant is a branded pharmaceutical company. *Id.* at ¶ 8. Plaintiff seeks injunctive relief and treble damages based on Defendant's alleged unlawful monopolization of the market for premetrexed injection products. *Id.* at ¶ 1. Plaintiff alleges that Defendant's anticompetitive conduct has delayed, and will continue to delay, the entry of pharmaceutical products (including Plaintiff's pemetrexed injection product) into the market to compete with Defendant's branded product, "ALIMTA®." *Id.*

Plaintiff claims that, among other things, Defendant submitted an incorrect and overbroad "use code"[3] description for its method-of-use patent (U.S. Patent No. 7,772,209 (the "'209

---

[2] The Court takes the factual background from Plaintiff's unredacted Complaint, D.E. 4. Some of the procedural history is taken from the parties' submissions.

[3] A "use code" is a description of a method-of-use patent submitted by the patent holder to be included in the Approved Drug Products and Therapeutic Equivalence Evaluations, commonly called the "Orange Book." In *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399 (2012), the United States Supreme Court described the process by which a patent is transformed into a use code description and then submitted for inclusion in the Orange Book:

> To facilitate the approval of generic drugs as soon as patents allow, the Hatch–Waxman Amendments and FDA regulations direct brand manufacturers to file information about their patents. The statute mandates that a brand submit in its NDA the patent number and the expiration date of any patent which claims the drug for which the brand submitted the NDA or which claims a method of using such drug. And the regulations issued under that statute require that, once an NDA is approved, the brand provide a description of any method-of-use patent it holds. That description is known as a use code, and the brand submits it on FDA Form 3542. . . . [T]he FDA does not attempt to verify the accuracy of the use codes that brand manufacturers supply. It simply publishes the codes, along with the corresponding patent numbers and expiration dates, in a fat, brightly hued volume called the Orange Book (less colorfully but more officially denominated Approved Drug Products with Therapeutic Equivalence Evaluations).

patent")) in an effort to block the entry of new drug products into the marketplace. *Id.* at ¶ 2. Plaintiff asserts that Defendant did so because the introduction of new products, including Plaintiff's product, would have "undermined [Defendant's] monopoly on the market for pemetrexed injection products." *Id.* at ¶ 2. According to Plaintiff, Defendant originally filed an appropriate use code narrative that accurately described the relationship between the drug substance in its drug product and its method-of-use patent. *Id.* at ¶ 29. The original description included in the Orange Book[4] accurately described Defendant's patent as covering "pretreatment of patients with vitamin B12 and folic acid prior to pemetrexed *disodium* administration." *Id* (emphasis added). The United States Food and Drug Administration ("FDA") assigned this narrative the code U-1077. *Id.* By the end of 2012, however, Defendant submitted a new and broader use code narrative (later assigned the code U-1296) which covers "use of pemetrexed with prior and/or repeated vitamin B12 and folic acid administration." *Id.* In other words, U-1296 referred to "pemetrexed" rather than "pemetrexed disodium" as in U-1077. Defendant also caused U-1296 to be added as an additional code in the Orange Book listing for the 500mg dosage strength of ALIMTA®. *Id.* According to Plaintiff, these changes were made "as a deliberate effort to manipulate the use-code process to delay and/or block FDA's approval of competing products that do not use pemetrexed *disodium* as their active ingredient." *Id.* (emphasis added).

Around the same time, Plaintiff developed a product named PEMFEXY™ by working with a different substance: pemetrexed *diacid*. Pl. Opp. at 6. On December 30, 2016, Plaintiff

---

*Id.* at 405–06 (quotations, citations, and original brackets omitted).

[4] As referenced in note 3, *supra*, the Approved Drug Products with Therapeutic Equivalence Evaluations, commonly called the "Orange Book," is published by the United States Food and Drug Administration ("FDA").

submitted its PEMFEXY™ New Drug Application ("NDA")[5] to the FDA seeking approval through the 505(b)(2) pathway as provided in the Hatch-Waxman Amendments of 1984. *Id*. Plaintiff's NDA included a section viii statement seeking to carve-out the portions of Defendant's labeling relating to the '209 patent. *Id*. On August 1, 2017, the FDA rejected Plaintiff's section viii statement because Lilly's amended use code narrative referred broadly to "pemetrexed" instead of just "pemetrexed disodium." Compl. at ¶ 33. The FDA indicated that Plaintiff would need to submit a Paragraph IV certification (instead of a section viii statement) if Plaintiff wanted to seek approval of its 505(b)(2) application. *Id*.

Plaintiff then filed a Paragraph IV certification, consistent with the Abbreviated New Drug Application process, with the FDA and provided notice to Defendant on August 7, 2017. Pl. Opp. at 7. In response, Defendant filed a patent infringement suit against Plaintiff in the United States District Court for the Southern District of Indiana on August 14, 2017. Pl. Opp. at 7; Def. Br. at 9; *see Eli Lilly & Co. v. Eagle Pharm., Inc.*, No. 17-2772 (S.D. Ind.) (D.E. 1, filed Aug. 14, 2017). Ten days later, on August 24, 2017, Plaintiff filed the present case in this District. D.E. 1.[6] On September 8, 2017, Plaintiff moved to dismiss Defendant's suit in the Southern District of Indiana, and Defendant voluntarily dismissed the action. Pl. Opp. at 7. On September 11, 2017, Defendant

---

[5] A New Drug Application is the first part of the approval process for drug manufacturers seeking to market a new brand-named drug. *See In re Lipitor Antitrust Litig.*, 868 F.3d 231, 240 (3d Cir. 2017) ("[T]he Hatch-Waxman Act requires a drug manufacturer wishing to market a new brand-name drug to first submit a New Drug Application ("NDA") to the Food and Drug Administration ("FDA"), and then undergo a long, complex, and costly testing process.... If this process is successful, the FDA may grant the drug manufacturer approval to market the brand-name drug."), *cert. denied sub nom. Pfizer Inc. v. Rite Aid Corp.*, 138 S. Ct. 983 (2018), and *cert. denied sub nom. Wyeth LLC v. Rite Aid Corp.*, 138 S. Ct. 984 (2018).

[6] Plaintiff's Complaint brings four counts. Counts One and Two allege violations of 15 U.S.C. § 2 (the "Sherman Antitrust Act"). *Id*. at ¶¶ 59-65, 66-73. Count Three claims restitution. *Id*. at ¶¶ 74-77. Count Four alleges tortious interference with prospective contracts. *Id*. at ¶¶ 78-80.

filed a patent infringement suit against Plaintiff in the United States District Court for the District of Delaware. Pl. Opp. at 8; *see Eli Lilly & Co. v. Eagle Pharm., Inc.*, No. 17-1293 (D. Del.) (D.E. 1, filed Sept. 11, 2017). Plaintiff has also filed counter-claims in the patent infringement suit, requesting that Defendant change its use code consistent with Plaintiff's view as to the appropriate language. According to Plaintiff, on October 26, 2017, the FDA tentatively approved Plaintiff's PEMFEXY™ product. However, because Defendant had obtained the statutory 30-month stay, Plaintiff was unable to launch its product. Pl. Opp. at 8.

Defendant also filed an Answer with affirmative defenses on October 27, 2017. D.E. 11, 12. On the same day, Defendant filed the present motion to transfer this case to the District of Delaware pursuant to 28 U.S.C. 1404(a), or, in the alternative, to stay the case pending the outcome of the case already in the District of Delaware. D.E. 14, 15. Plaintiff submitted a brief in opposition on November 6, 2017, D.E. 20, to which Defendant replied on November 13, 2017, D.E. 29, 30.

## II. ANALYSIS

Defendant moves to transfer this case to the District of Delaware pursuant to Section 1404(a). Section 1404(a) provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

### A. The First-Filed Rule

As an initial matter, Plaintiff contends that application of the "first-filed" rule precludes transfer in this case. The first-filed rule requires that, absent extraordinary circumstances, "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (citations and

bracket omitted), *aff'd on other grounds*, 493 U.S. 182 (1990). "The rule promotes comity, encourages judicial efficiency, avoids burdening the federal judiciary with duplicative litigation, and prevents the judicial embarrassment from conflicting judgements." *Hall v. Welch Foods, Inc.*, No. 17-3997, 2017 WL 4422418, at *3 (D.N.J. Oct. 5, 2017) (quotation omitted). "[T]he first-filed rule ordinarily counsels deference to the suit that was filed first, when two lawsuits involving the same issues and parties are pending in separate federal district courts." *Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 502 F. App'x 201, 205 (3d Cir. 2012).

However, the rule is not without exceptions. "Courts have consistently recognized that the first-filed rule is not a rigid or inflexible rule to be mechanically applied." *Honeywell*, 502 F. App'x at 205 (quotation and bracket omitted). The exceptions include: "(1) the existence of rare or extraordinary circumstances; (2) the first-filer engaged in inequitable conduct; (3) he acted in bad faith; (4) he engaged in forum shopping; (5) the later-filed action has developed further than the first-filed action; and (6) the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in a less favorable forum." *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 455 (E.D. Pa. 2013) (citing *Univ. of Pa.*, 850 F.2d at 972). "Ultimately, then, the first-filed rule is not a mandate directing wooden application of the rule." *Honeywell*, 502 F. App'x at 205 (quotation omitted). In sum, "[w]hen two suits involving the same parties and subject matter are pending concurrently, the first-filed suit should have priority absent a showing that the balance of inconvenience favors transfer or unless there are special circumstances which justify giving priority to the second suit." *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 487 (D.N.J. 1993).

The Court also notes that there is a split in this Circuit regarding whether adherence to the first-filed rule is strongly applied. *See, e.g., Synthes, Inc.*, 978 F. Supp. 2d at 455 n.1 ("Courts in

6

this circuit diverge on whether adherence to the first-filed rule is commonplace."); *compare Koresko*, 403 F. Supp. 2d at 400 ("On balance, due consideration to the orderly administration of justice counsels in favor of ordinarily respecting the first-filed rule.") and *Southampton Sports Zone, Inc. v. ProBatter Sports, LLC*, No. 03–3185, 2003 WL 22358439, at *4 (E.D. Pa. Sept. 10, 2003) (stating that departures from the first-filed rule are rare) *with FMC Corp. v. AMVAC Chem. Corp.*, 379 F.Supp.2d 733, 744 (E.D. Pa. 2005) (stating that exceptions to the first-filed rule are not rare, rather, departure occurs where justice requires).

In this case, both parties appear to have engaged in venue gamesmanship. Defendant first filed its patent infringement in the Southern District of Indiana, where its principal place of business is located. However, the Court agrees with Plaintiff that in light of the United States Supreme Court's ruling *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, -- U.S. --, 137 S. Ct. 1514 (2017), Defendant knew (or at least should have known) that it would be unable to sue Plaintiff in that venue. *TC Heartland* was decided in May 2017, nearly three months before Defendant filed in the Southern District of Indiana, and any reasonable patent litigator would have soon been aware of the opinion. The holding in *TC Heartland* was unequivocal as to proper venue in a patent matter: under the patent venue statute, 28 U.S.C. § 1400(b), a domestic corporation only resides in its state of incorporation. 137 S. Ct. at 1520. Accordingly, Defendant knew (or should have known) that it could only bring its patent infringement suit in Delaware, where Plaintiff was incorporated, unless Plaintiff waived venue or unless Defendant could meet the other requirement of Section 1400(b). The alternative requirement of the section required that Plaintiff "committed acts of infringement" and had "a regular and established place of business" in the

Southern District of Indiana.[7] *TC Heartland* did not give Defendant any wiggle room by, for example, setting forth a multi-factor test in which various interests were taken into account. Instead, *TC Heartland* set a clear, bright-line rule.

Apparently recognizing this critical error, Plaintiff did not immediately move to dismiss the case in the Southern District of Indiana. Instead, Plaintiff filed the current matter in this Court on August 24, 2017, less than two weeks after the Southern District of Indiana case was filed on August 14, 2017. Thus, when Plaintiff filed in this Court, there was case docketed in the Southern District of Indiana, albeit one with a fatal venue flaw; the Southern District of Indiana suit had not been dismissed when Plaintiff's filed here. Then, a little over two weeks later, on September 8, 2017, Plaintiff filed its motion to dismiss in the Southern District of Indiana. Apparently recognizing the futility of contesting the motion, Defendant dismissed its case in Indiana and instead filed its patent infringement suit in the District of Delaware on September 11, 2017, a mere three days after the motion to dismiss was filed. Plaintiff claims that Defendant could have filed its patent infringement suit in the District of New Jersey. Assuming that alleged acts of infringement could have been plausibly pled as having occurred in New Jersey, Plaintiff appears correct. However, pursuant to the clear language of Section 1400(b), Defendant also appropriately filed in Delaware. Plaintiff has not indicated that it has moved to transfer Defendant's Delaware matter to this District.

This matter does not reflect the usual circumstances found in a first-filed rule analysis because the Southern District of Indiana case was still pending when Plaintiff filed this suit. As a result, even if Plaintiff's current suit in this Court could be considered first-filed, it was an

---

[7] Defendant has not posited that it reasonably believed that it could meet this alternate venue requirement. It does not appear that Defendant could do so in good faith as Plaintiff's principal place of business is in New Jersey.

8

anticipatory filing or, more aptly, it was an anticipatory filing of a then-pending matter that was going to be re-filed in a different district. When Plaintiff filed its antitrust action in this Court, it knew or should have known that Defendant was going to continue with its patent infringement suit even if it was not in the Southern District of Indiana. Plaintiff has given no indication to the contrary. Defendant's filing in the Southern District of Indiana, Plaintiff's filing in this Court, the dismissal of Defendant's suit in Indiana, and Defendant's re-filing in the District of Delaware all occurred within less than a month. *Cf. Univ. of Pa.*, 850 F.2d at 976 (recognizing that courts have granted exceptions to the rule "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." (citing cases)); *Koresko*, 403 F. Supp. 2d at 399 (recognizing the same). It appears that Plaintiff was forum-shopping in anticipation of Defendant refiling its patent suit. *See Koresko*, 403 F. Supp. 2d at 401 ("Some evidence that a first-filed case was filed for the purpose of forum shopping . . . is necessary before courts find it was improperly anticipatory, and therefore warranted a departure from the first-filed rule.").

For foregoing reasons, the Court finds that the first-filed rule does not apply to the circumstances of Plaintiff's suit in this Court. Accordingly, the Court moves to consider the merits of Defendant's transfer motion.[8]

---

[8] Moreover, as is discussed further below, judicial economy and the interests of justice are furthered by transfer because resolution of Defendant's patent suit in the District of Delaware could be dispositive of the issues in this case, or in the very least, narrow the issues in Plaintiff's antitrust suit. Given that the first-filed rule is not rigidly applied, the Court would find that these countervailing interests countenance against the application of the first-filed rule given the particular facts and issues in this case. It would be a waste of the judicial system's resources (as well as the parties' resources) for both suits to continue separately. *See Univ. of Pa.*, 850 F.2d 969, 977 (stating that "the [first-filed] rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments" and that accordingly, "fundamental fairness dictates the need for fashioning a flexible response to the

9

### B. 28 U.S.C. § 1404(a)

The Court now turns to an analysis of Section 1404(a). The purpose of a discretionary transfer under Section 1404(a) is "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). The movant must prove that a transfer is appropriate and "in ruling on [a defendant's] motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (quotations omitted). When analyzing whether a case should be transferred pursuant to Section 1404(a), courts engage in a two-part analysis: first determining if venue is proper in the proposed transfer court and then analyzing public and private interest factors. *Reckitt Benckiser Pharm., Inc. v. Biodelivery Scis. Int'l, Inc.*, No. 14-5892, 2015 WL 4461511, at *2 (D.N.J. July 21, 2015). The Court analyzes each in turn.

#### i. Venue is Proper in the District of Delaware

First, the Court must find that the venue to which the movant requests transfer is a venue in which the action could have originally been brought. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). Here, Plaintiff does not contest that the District of Delaware is a proper venue for Plaintiff's suit. Accordingly, the Court turns to the second part of the transfer analysis.

#### ii. Public and Private Interest Factors

The second portion of the Section 1404(a) analysis requires the Court to determine whether transfer would be "for the convenience of the parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a); *see Reckitt Benckiser Pharm.*, 2015 WL 4461511, at *2. To determine this, the Court must consider a variety of factors. Section 1404(a) provides three statutory factors to

---

issue of concurrent jurisdiction." (quotations omitted)). Therefore, even if Plaintiff's suit was a non-anticipatory first-filed suit, the Court would decline to apply the rule here.

10

consider: "convenience of parties, convenience of witnesses, or interests of justice." *Jumara*, 55 F.3d at 879. In addition, the Third Circuit has provided private and public interests (sometimes called the *Jumara* factors) that a court must also weigh. *Id.* at 879-80; *see Reckitt Benckiser Pharm., Inc.*, 2015 WL 4461511, at *2.

> The public interest factors are:
>
>> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara* at 879–80 (internal citations omitted).

> The private interest factors are:
>
>> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (internal citations omitted). "There is no mechanical rule governing how a district court must balance these factors." *Reckitt Benckiser Pharm., Inc.*, 2015 WL 4461511, at *3 (citation omitted). Instead, courts are to decide motions to transfer under Section 1404(a) on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The parties appear to agree that (1) enforceability of the judgment and (2) the courts' relative familiarity with the applicable laws are in equipoise. The parties generally contest the relative weight of the remaining public and private interest factors.

The Court agrees that there is one public interest factor that weighs in Plaintiff's favor, that is, the local interest in deciding local controversies at home. However, a number of public interest factors weigh in favor of transfer. In the Court's view, the overarching factor which supports transfer is that the Delaware patent infringement matter should be resolved before the New Jersey antitrust case. Plaintiff's case in this Court and Defendant's suit in the District of Delaware are related in substantial and intertwined ways. While Plaintiff's present suit brings freestanding antitrust claims, the result of Defendant's patent suit in the District of Delaware will likely have a considerable impact on Plaintiff's antitrust claims.

The resolution of the patent suit will be dispositive if Defendant's patent is found to be valid and Plaintiff's patent is found to infringe; in such a scenario, Plaintiff's antitrust claims will be moot. Likewise, if Plaintiff does not prevail on its counterclaim in Delaware, that the use code U-1296 should be changed from "pemetrexed" to "pemetrexed disodium," then the antitrust suit will be moot. At the same time, if Plaintiff prevails on its counterclaim in the Delaware case, it will have a material impact on Plaintiff's antitrust claims. In other words, the Delaware action could moot the case in this District. Even if the resolution of Defendant's suit in the District of Delaware does not moot Plaintiff's present suit, it may narrow the issues before this Court. It is common that when a patent infringement suit also contains antitrust allegations, a court will stay the antitrust portion of the case pending the outcome of the patent allegations. *See, e.g., Fresenius Kabi USA, LLC v. Fera Pharm., LLC*, No. 15-3654, 2017 WL 2213123, at *5 (D.N.J. May 19, 2017) (severing and staying a defendant's antitrust counterclaims pending the resolution of patent infringement claims); *Otsuka Pharm. Co. v. Torrent Pharm. Ltd., Inc.*, 118 F. Supp. 3d 646, 659–60 (D.N.J. 2015) (denying a motion to dismiss, but bifurcating and staying defendant's antitrust counterclaim pending resolution of patent infringement issues); *Eurand Inc. v. Mylan Pharm. Inc.*,

No. 08-889, 2009 WL 3172197, at *2 (D. Del. Oct. 1, 2009) (granting a motion to sever and stay defendants' antitrust counterclaim pending resolution of patent infringement claims); *Abraxis Bioscience, Inc. v. Navinta LLC*, No. 07-1251, 2008 WL 2967034, at *9 (D.N.J. July 31, 2008) (denying a motion to dismiss, but granting request to bifurcate and stay antitrust counterclaims pending resolution of patent infringement claims).

In addition, transfer would eliminate any possibility of inconsistent rulings or duplicative discovery as Plaintiff is arguing that even a stay of the current case is not warranted.[9] *CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 651 (D.N.J. 2004) ("Where . . . related lawsuits are pending elsewhere, transferring a case serves not only private interests but also the interests of justice because it eliminates the possibility of inconsistent results . . . , and conserves judicial resources."). The Court is aware that it could permit Plaintiff's case to go forward in New Jersey and limit discovery to antitrust issues, such as information related to the scope of the relevant market, that are not otherwise addressed by discovery in the Delaware patent infringement case. The Court rejects this approach for practical reasons, such as two different courts overseeing discovery and ruling on the inevitable motions that discovery sought in one venue has already been produced in another or that discovery sought in one venue has already been precluded in another. Moreover, discovery in antitrust matters is usually voluminous, time consuming, and expensive. For this reason, it is not uncommon for a court that has jurisdiction over both the patent infringement and antitrust claims to stay the antitrust portion until the patent phase is resolved. *See, e.g.*, *Fresenius Kabi USA, LLC*, 2017 WL 2213123, at *5 (finding that

---

[9] Defendant argues that if the Court does not find transfer appropriate, the Court should stay the current matter pending the resolution of Defendant's patent claims. Def. Br. at 19-21; Def. Reply at 12-15. Plaintiff responds that a stay is not appropriate. Pl. Opp. at 25-26 (arguing that "there is no reason this case should be stayed"). Because the Court grants Defendant's motion to transfer, it does not reach the alternative request to stay Plaintiff's suit.

severing and staying defendant's antitrust counterclaims pending the resolution of patent infringement claims would "conserve judicial resources"); *Abraxis Bioscience, Inc.*, 2008 WL 2967034, at *8 (granting request to bifurcate and stay antitrust counterclaims pending resolution of patent infringement claims that may "may further support, or disprove, [d]efendant's Counterclaims").

For the foregoing reasons, the Court finds that the public interest factors favor transfer.

The Court must also consider the relevant private interest factors. The parties largely focus on the public interest factors, but briefly discuss some of the relevant private interest factors. *See* Def. Br. at 17-19; Pl. Opp. at 11-12. Defendant argues that transfer would eliminate the risk of duplicative efforts in each stage of litigation, as well as inconsistent rulings. Plaintiff contends that its choice of forum should be granted deference and that New Jersey is the most convenient forum for the parties and has the greatest connection to Plaintiff's suit.

The Court finds that the private interest factors weigh slightly against transfer. Generally, a plaintiff's choice of forum should not be disturbed unless the movant can show that the balance of conveniences weighs strongly in favor of transfer. *See, e.g.*, *Shutte*, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." (quotation omitted)). Nevertheless, this factor is given less weight here due to the unique facts of this case as discussed in the Court's analysis of the first-filed rule. Moreover, this is not the only factor to be considered. *See Ricoh Co.*, 817 F. Supp. at 480 (stating that "a plaintiff's choice of forum is neither dispositive of the transfer analysis nor is it the only factor to be considered" because "[t]he preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." (quotations omitted)). In terms of the relative convenience of the parties, the Court finds that New

Jersey would probably be more convenient for Plaintiff since its principal place of business is in the state. Yet, Plaintiff is also a Delaware corporation. As such, it must anticipate litigating there. In fact, and as noted, Plaintiff has not moved to transfer the District of Delaware action to this District, meaning that Plaintiff will be litigating in Delaware either way. The Court does not find that any of the additional private interest factors weigh against transfer.

The Court finds that the public and private interest factors, when considered together, weigh in favor of transfer in this case. In short, the overlapping issues of the suits militate in favor of transfer. Defendant's patent suit in the District of Delaware could be dispositive of Plaintiff's antitrust claims or could narrow the scope of issues in Plaintiff's antitrust claims. For these reasons, the Court finds that transfer to the District of Delaware pursuant to Section 1404(a) is appropriate.

### III. CONCLUSION

For the reasons set forth above, Defendant's motion to transfer (D.E. 14) is **GRANTED**. This case will be transferred pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Delaware. An appropriate Order accompanies this Opinion.

Dated: July 20, 2018

John Michael Vazquez, U.S.D.J.